CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED
JUN 0 4 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

MOTION CONTROL INDUSTRIES, INC.,
                           *Petitioner,*

v.

BRAKE RESOURCES, INC.,
                           *Respondent.*

CIVIL NO. 3:09CV00032

**MEMORANDUM OPINION**

JUDGE NORMAN K. MOON

This matter is before the Court on Petitioner Motion Control Industries, Inc.'s ("MCI") Amended Petition to Compel Arbitration (docket no. 5) of certain claims asserted by Respondent Brake Resources, Inc. ("BRI") related to a dispute under the parties' July 3, 2008 Contract Manufacturing Agreement ("Manufacturing Agreement"). Because the Manufacturing Agreement clearly evinced the parties' intent to submit all claims arising in connection with the Agreement to arbitration, and because MCI has not waived its right to compel arbitration, MCI's Amended Petition will be granted in a separate Order to follow.

## I. BACKGROUND

On July 3, 2008, MCI and BRI entered into the aforementioned Manufacturing Agreement, whereby MCI retained BRI to manufacture new lined and relined brake shoe requirements for MCI's customers. Under the Agreement, MCI retained the right, title, and interest in the cores, linings, lined shoes, and unfinished brake shoe components that BRI used to meet the needs of MCI's customers. The Agreement was effective upon execution and was to remain in full force and effect for seven years. Section 24 of the Manufacturing Agreement stated that the contract would be governed by New York law, and Section 25 required arbitration

of "all disputes arising in connection with the [Manufacturing] Agreement." Specifically, Section 25 provided that:

> All disputes arising in connection with the Agreement shall be resolved by arbitration in accordance with the rules of the American Arbitration Association by three arbitrators, one of whom shall be appointed by MCI, one of whom shall be appointed by BRI and the third of whom shall be appointed by the first two arbitrators. The place of arbitration shall be the place of business of the party against whom arbitration is sought pursuant to this section or as otherwise agreed by the parties.

Also on July 3, 2008, the parties entered into a Bill of Sale, whereby BRI purchased from MCI, for $600,000, certain equipment necessary to manufacture the new lined and relined brake shoes for MCI's customers. In connection with the Bill of Sale, BRI executed a Promissory Note and the parties signed a Security Agreement, under which BRI granted MCI a security interest in the equipment. In contrast to the Manufacturing Agreement, neither the Bill of Sale, Promissory Note, nor the Security Agreement contained an arbitration clause.

The parties now dispute their rights and obligations under the July 3, 2008 agreements. On April 15, 2009, in breach of Section 25 of the Manufacturing Agreement, BRI filed suit against MCI in the U.S. District Court for the Eastern District of Missouri. BRI's Complaint, which alleged that MCI made false and deceptive misrepresentations about the extent of its customer base and other information before entering into the Manufacturing Agreement, asserted claims for: (1) fraud in the inducement, (2) action on account, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) quantum meruit, and (6) indemnity.

On April 30th, upon learning of BRI's suit, MCI filed a Petition to Compel Arbitration (docket no. 1) in this Court to prevent BRI from litigating its claims, which arose in connection with the Manufacturing Agreement, in the Eastern District of Missouri. That same day, MCI also filed a Motion for Order of Delivery in Replevin ("Replevin Action") in the Circuit Court of St.

-2-

Case 3:09-cv-00032-NKM   Document 11   Filed 06/04/09   Page 2 of 8   Pageid#: 273

Louis County, Missouri to obtain access to the equipment, in which it held a security interest, and the manufacturing goods in BRI's possession. MCI's Replevin Action also sought judgment on the Promissory Note, which MCI claimed BRI had defaulted on.

Also on April 30th, BRI amended its complaint in Missouri federal court by: (1) seeking rescission of the Manufacturing Agreement, (2) seeking a constructive trust over MCI's property in BRI's possession, (3) adding negligent misrepresentation to its claims, and (4) asserting a common law lien on MCI's inventory that was in BRI's possession. On May 11th, however, BRI dismissed the amended complaint and refiled it as a counterclaim to MCI's Replevin Action in Missouri state court.

On May 15th, in light of the aforementioned filings, MCI filed an Amended Petition to Compel Arbitration in this Court. A hearing on the matter was held on June 3rd. In the Amended Petition, MCI argues that all of BRI's counterclaims to the Replevin Action fall within the scope of the Manufacturing Agreement's arbitration provision and should consequently be heard in an arbitration hearing in Charlottesville – the location of MCI's principal place of business. In response, BRI argues that, under New York law (which it claims governs the arbitration provision), MCI waived its right to arbitrate and must proceed in federal court.

## II. DISCUSSION

### A. APPLICABLE LAW

As an initial matter, the parties dispute whether New York law or federal law governs the interpretation of Section 25 of the Manufacturing Agreement. As explained above, Section 24 of the Manufacturing Agreement stated that the contract would be "governed by and construed in accordance with the internal laws of the State of New York without regard to conflict of law principles." While BRI argues that New York law should apply and contends that New York law

-3-

is actually consistent with Fourth Circuit precedent on the subject, MCI argues that federal law applies to the interpretation of Section 25.

Even when a contract contains a choice of law provision requiring the application of the law of a particular state, federal law governs the interpretation of arbitration agreements. *Smith Barney, Inc. v. Critical Health Sys.*, 212 F.3d 858, 861 (4th Cir. 2000) (explicitly rejecting the argument that New York law governed the interpretation of an arbitration agreement in a contract that specifically required the application of such); *see also Trimless-Flashless Design, Inc. v. Thomas & Betts Corp.*, 2000 U.S. App. LEXIS 26633 (4th Cir. Oct. 23, 2000). Thus, despite Section 24 of the Manufacturing Agreement's requirement to the contrary, federal law governs the interpretation and application of Section 25 of the Manufacturing Agreement in this case.

## B. FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25. Arbitration should be required if the arbitration clause at issue is "susceptible of an interpretation that covers the asserted dispute." *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)). To decide whether to compel arbitration, a court should:

> ask whether the parties agreed to submit their claims to arbitration. If so, it is then necessary to determine whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Assuming Congress has not evinced such an intention, a court must compel arbitration and stay judicial proceedings, provided that it determines that the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral

forum.

*Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 867 (E.D. Va. 2009) (citations and quotations omitted).

It is undisputed that Section 25 of the Manufacturing Agreement is more than susceptible of an interpretation that covers the dispute asserted in BRI's counterclaim, in which BRI seeks to rescind the Manufacturing Agreement on the basis of alleged misrepresentations that MCI made prior to the execution of the Agreement. Furthermore, it is clear that the parties agreed to submit all claims "arising in connection with" the Manufacturing Agreement to arbitration, and there is no evidence that Congress evinced an intent to preclude arbitration of the rights at issue. Nor is there any indication that BRI would not be able to fully vindicate its claims against MCI in an arbitral forum.

Because there is little, if any, dispute that the parties agreed to submit disputes like the one at issue in BRI's counterclaim to arbitration, the key question is whether MCI waived its right to arbitration by filing the Replevin Action in Missouri state court. Under the FAA, "[a] litigant may waive its right to [arbitration] by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). Due to the strong federal policy in favor of arbitration, however, courts should "not lightly infer the circumstances constituting waiver." *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 95 (4th Cir. 1996). The "key inquiry is whether the party opposing the stay has suffered any actual prejudice." *Id.* "The party opposing the stay bears the heavy burden of proving waiver." *Id.* Although "mere delay, without more, will not suffice to constitute waiver," *Maxum*, 779 F.2d at 981, "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d

250, 252 (4th Cir. 1987).

I find that BRI has not met its "heavy burden of proving waiver" in this case. BRI claims that it would be prejudiced if it was forced to arbitrate its counterclaims because it would be forced to try the same issues in two different forums and produce witnesses in two different states to testify on many of the same issues. At the hearing, however, counsel for MCI stated that MCI was willing to stay its Replevin Action pending the outcome of arbitration of BRI's counterclaims. Should the arbitrators of BRI's counterclaims determine that the matters raised in MCI's Replevin Action were also subject to arbitration, then MCI would submit to arbitration of those matters. If not, MCI would proceed with its Replevin Action in Missouri state court only after resolution of BRI's counterclaims in arbitration. The mere possibility that BRI might be forced to produce witnesses and try similar issues in two different venues in the event that arbitration does not resolve the issues in MCI's Replevin Action is insufficient to overcome BRI's heavy burden of proving waiver. *See, e.g., Gardner v. Bishop*, 1993 U.S. App. LEXIS 952 (4th Cir. Jan. 19, 1993) (finding assertions of prejudice insufficient to overcome burden of proving waiver where petitioner filed motion to stay pending arbitration thirteen months after he brought the suit, the parties had progressed with discovery, and separate proceedings raised the possibility of inconsistent verdicts). Because the chain of aforementioned events occurred in the last six weeks and the parties have not progressed into discovery on any of the matters in Missouri state court, BRI has suffered little, if any, prejudice as a result of MCI's attempt to compel arbitration. The extent of MCI's trial-oriented activity thus far has merely involved the filing of the Replevin Action, which arises predominantly in connection with the July 3, 2008 Bill of Sale, Promissory Note, and Security Agreement – none of which are subject to arbitration. Furthermore, MCI filed the Replevin Action in an attempt to maintain the status quo

Case 3:09-cv-00032-NKM   Document 11   Filed 06/04/09   Page 6 of 8   Pageid#: 277

and prevent irreparable harm by preventing the further diminution in value of manufactured goods it held the rights and title to. Courts have long acknowledged the right of a party to take such an action, even when its claim is otherwise subject to arbitration. *See Drivers, Chauffeurs, Warehousemen & Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.*, 582 F.2d 1336, 1341 (4th Cir. 1978); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775-76 (N.D. Ill. 2002) ("Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the status quo ante and prevent irreparable harm pending a decision by the arbitration panel."). Because of the slight degree of prejudice suffered by BRI and the relatively minimal, but warranted, extent of trial-oriented activity by MCI, I find that BRI has not met its "heavy burden of proving waiver."

### III. CONCLUSION

Because the parties clearly agreed to submit all claims "arising in connection with" the Manufacturing Agreement to arbitration and BRI has not met its burden of proving that MCI waived its right to arbitration under the circumstances, MCI's Amended Petition to Compel Arbitration will be granted in a separate Order to follow. In accordance with the terms of Section 25 of the Manufacturing Agreement, the parties will be ordered to submit to arbitration of BRI's counterclaims in Charlottesville. Further, MCI will be ordered to stay its Replevin Action in the Circuit Court of St. Louis County pending the resolution of BRI's counterclaims in arbitration and any other claims or issues deemed arbitrable by the arbitrators selected by the parties.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 4th day of June, 2009.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE